IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA LORENCITA CHAVEZ,

    Plaintiff,

vs.                                           Civ. No. 05-396 JP/RLP

QWEST, INC.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On July 28, 2006, the Defendant filed Qwest's Motion for Summary Judgment and Memorandum in Support of the Motion (Doc. No. 26). Having reviewed the briefs and relevant law, the Court finds that Defendant's motion for summary judgment should be granted and that Plaintiff's claims should, therefore, be dismissed with prejudice.

*A. Background*

Defendant employed Plaintiff from 1986 until November 12, 2004 when Defendant terminated Plaintiff from employment. Plaintiff claims that prior to her termination on March 9, 2004 she was exposed to toxic chemicals at her work place. The chemical exposure exacerbated a pre-existing eye condition, thereby preventing Plaintiff from returning to work. Consequently, the Reed Group, the third-party administrator of Defendant's short-term disability insurance plan, awarded Plaintiff short-term disability insurance benefits from March 10, 2004 to July 11, 2004. Plaintiff made subsequent claims for short-term disability insurance benefits but the Reed Group denied those claims.

Plaintiff eventually returned to work on August 6, 2004. Plaintiff claims she was again exposed to toxic chemicals at her work place on August 31, 2004. Plaintiff alleges that her eye

condition was exacerbated once more preventing her from returning to work. Plaintiff, therefore, reapplied for short-term disability insurance benefits. The Reed Group denied that claim for short-term disability insurance benefits.

On October 27, 2004, Roxanna Borrego, Plaintiff's supervisor, wrote a letter to Plaintiff which stated in pertinent part:

> [S]tarting 09/07/04, your absence is regarded as unexcused time and you are not entitled to be paid.
>
> In light of the above, it is important that you return to work. If you feel you may need some type of accommodation to enable you to return to work and to perform all of the essential functions of your job, we will be happy to discuss any request(s) for accommodation with you.
>
> If you fail to return to work by 11/01/04 at 12 noon, we will assume that you do not choose to continue your employment with Qwest, and you will be terminated for failure to report.

Ex. B (attached to Declaration of Counsel in Support of Qwest's Motion for Summary Judgment Filed July 28, 2006 (Doc. No. 27)(Defendant's Exhibits), filed July 28, 2006). In a letter dated November 1, 2004, Plaintiff replied to Ms. Borrego stating that her treating physician, Dr. Donald Rodgers, had not released her to go back to work and so she could not return to work. Ex. 4 (attached to Exhibits to Plaintiff's Response to Defendant Qwest's Motion for Summary Judgment (Doc. No. 30), filed Aug. 23, 2006)(Plaintiff's Exhibits). In fact, Dr. Rodgers had previously stated in an October 18, 2004 letter to Plaintiff's attorney, Patrick Fogel, that Plaintiff suffered from a chronic eye condition "which was made significantly worse following her chemical exposure, and which literally precludes her ability to work because of visual limitations." Ex. 2 at 1 (attached to Plaintiff's Exhibits). Dr. Rodgers then stated that he "instructed [Plaintiff] not to return to work until this has become more tolerable and frankly, that may never happen." *Id*.

2

On November 10, 2004, Plaintiff applied for social security disability insurance benefits. Plaintiff indicated in her application for social security disability insurance benefits that she was unable to work because of a disabling condition that began on March 9, 2004. Ex. D (attached to Defendant's Exhibits).[1]

On November 12, 2004, Ms. Borrego wrote Plaintiff to inform her that Defendant had terminated her employment effective November 12, 2004 for failure to report to work on November 1, 2004. Plaintiff was two years short of having her retirement benefits vested when Defendant terminated her.

Plaintiff brings two counts against her former employer, the Defendant.[2] Plaintiff alleges in Count I that Defendant violated the Employee Retirement Income Security Act (ERISA) by 1) discriminating against Plaintiff with respect to ERISA benefits because she is disabled, 2) terminating Plaintiff to reduce the retirement and long-term disability insurance benefits Plaintiff would have been entitled to receive if Defendant had not terminated her, 3) terminating Plaintiff in retaliation for her attempts to obtain both disability insurance and retirement benefits, and 4) breaching its fiduciary duty to Plaintiff. Plaintiff alleges in Count II that Defendant violated the public policy established under the New Mexico Human Rights Act (NMHRA) by wrongfully terminating her based on her "serious medical condition"and by failing to accommodate her

---

[1]The Social Security Administration approved Plaintiff's application for social security disability insurance benefits in the fall of 2005 and determined that Plaintiff was disabled as of March 9, 2004.

[2]This case has been consolidated with two other similar cases for pretrial case management purposes only: *Peacock v. Qwest, et al.*, Civ. No. 05-446 WD/RLP; and *Hicks-Wagner v. Quest, et al.*, Civ. No. 05-395 WJ/RLP. The Honorable District Court Judge William Johnson granted summary judgment in favor of the defendants in *Hicks-Wagner*. *See* Memorandum Opinion and Order Granting Summary Judgment (Doc. No. 60), filed Nov. 15, 2006.

3

disability in the work place. Plaintiff seeks the following in damages: lost wages including back and front pay; lost benefits; mental, emotional, and psychological distress damages; punitive damages; pre- and post-judgment interest; and attorneys' fees and costs.

*B. Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C. Discussion*

    *1. Plaintiff's ERISA Claims*

Defendant argues that Plaintiff's ERISA claims fail as a matter of law for several reasons. First, Defendant argues that Plaintiff cannot sue for lost benefits if she is suing under §510 of ERISA, 29 U.S.C. §1140. Second, Defendant argues that Plaintiff cannot establish a *prima facie*

4

case of employment discrimination under §510 because she is not qualified to return to work. Third, Defendant argues that even if Plaintiff is qualified to return to her work, Plaintiff cannot show that Defendant had a "specific intent" to interfere with Plaintiff's ERISA rights. Finally, Defendant argues that Plaintiff's various requests for damages are unavailable under §510.

### a. Plaintiff's ERISA Claim for Lost Benefits Under §510

Plaintiff concedes that her ERISA claims are based on §510 of ERISA. Section 510 makes it unlawful for anyone to (1) discharge or discriminate against a participant or beneficiary who exercises a right under an employee benefit plan or ERISA, or (2) interfere with a participant or beneficiary's attainment of rights provided under an employee benefit plan or ERISA. Defendant contends that §510 is an anti-discrimination statute under which the Plaintiff is limited to equitable relief as provided by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Defendant maintains that if Plaintiff intended to bring a claim for recovery of benefits Plaintiff should have brought that claim under §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) which is a benefits recovery provision not limited to equitable relief. Plaintiff argues, however, that she can recover benefits under §510 because §510 states that the provisions of §502 "shall be applicable in the enforcement of this section." According to Plaintiff, this general language provides that a plaintiff bringing a §510 lawsuit can recover benefits under §502(a)(1)(B). Plaintiff cites to *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990); *Woods v. Halliburton Co.*, 49 Fed. Appx. 827, 829 (10th Cir. 2002); and *Garratt v. Walker*, 164 F.3d 1249, 1253 (10th Cir. 1998) to support this argument.

*Ingersoll Rand Co.* and *Garratt*, however, are not helpful to Plaintiff because they do not state which subsection or subsections of §502(a) provides the appropriate remedy for a §510

5

lawsuit. *Woods*, on the other hand, specifically states that: "Section 1140 [§510] is enforced through private actions authorized by 29 U.S.C. §1132(a)(3) [§502(a)(3)]...." *Woods*, 49 Fed. Appx. at 829. Other Tenth Circuit cases have come to the same conclusion. *See Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1247 (10th Cir. 2004)("Section 502(a)(3) of ERISA provides the plan participant with his exclusive remedies for a §510 violation."); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197,1203 (10th Cir. 1990)(same). *See also Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir. 1993)("section 502-the remedies provision for section 510-provides only for equitable relief."). Consequently, Plaintiff is entitled to only §502(a)(3) equitable relief and cannot seek to recover ERISA benefits under §502(a)(1)(B). Plaintiff's claim for recovery of ERISA monetary benefits is, therefore, subject to dismissal by summary judgment.

### b. Whether Plaintiff Can Establish a Prima Facie Case Under ERISA §510

Defendant argues next that it is also entitled to summary judgment on Plaintiff's §510 claim for equitable relief because Plaintiff cannot establish a *prima facie* case under §510. Defendant asserts that a §510 *prima facie* case requires that the Plaintiff be "qualified" and thereby able to return to her work.[3] Defendant notes that Plaintiff alleges that she cannot return to work.

Defendant supports its assertion that a §510 *prima facie* case requires that a plaintiff be qualified by citing to federal circuit courts other than the Tenth Circuit and to cases within the

---

[3]The Defendant suggests that it would be appropriate to use the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) to determine whether it interfered with Plaintiff's ERISA rights under §510. *See Cunningham v. Adams*, 106 Fed. Appx. 693, 698 (10th Cir. 2004)(applying the *McDonnell Douglas* analysis to a §510 ERISA case).

Tenth Circuit which do not directly address ERISA claims. Defendant fails to cite to the controlling Tenth Circuit case, *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir. 1995), which sets forth the elements of a §510 *prima facie* case. In *Maez*, the Tenth Circuit explained that the "plaintiff must show '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Id*. (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), *cert. denied*, 484 U.S. 979 (1987)). The Tenth Circuit does not require that the Plaintiff demonstrate that she is still qualified to perform her job in order to establish a *prima facie* case under §510.

Nonetheless, the Defendant further argues that Plaintiff cannot show that Defendant had a "specific intent" to interfere with Plaintiff's ERISA rights. This argument falls under the second element of a §510 *prima facie* case, namely the purposeful interference with an employee's ERISA rights. To meet this intent element, an employee "is not required to show that the employer's sole motivation was to interfere with employee benefits, she need only show that is was a motivating factor." *Garratt*, 164 F.3d at 1256. Moreover, an employee can show this "specific intent" through either direct or circumstantial evidence. *Id*.

Plaintiff presents a "litany of contradictory and irreconcilable facts" to demonstrate "specific intent" by the Defendant. Since the Defendant responded to this litany of facts categorically, the Court will address each of these categories in turn.

*(1). Facts Concerning Medical Information or Documentation (Nos. 1-9)*[4]

Facts Nos. 1-9 refer to actions or inactions taken by the Reed Group with respect to medical information or documentation. These facts are relevant and material to the Reed Group's decision to deny Plaintiff short-term disability insurance benefits but are not relevant or material to the issue of whether Defendant was specifically motivated to interfere with Plaintiff's ERISA rights by terminating Plaintiff. A reasonable juror, therefore, could not find that Facts Nos. 1-9 constitute evidence of "specific intent" by Defendant to interfere with Plaintiff's rights under ERISA.

*(2). Facts Regarding Plaintiff's Failure to Return to Work (Nos. 10, 12, and 13)*

Facts Nos. 10, 12, and 13 show that 1) Ms. Borrego did not personally know whether Plaintiff could return to work in November 2004; 2) Plaintiff wanted to return to work; and 3) that Plaintiff was terminated involuntarily. These facts, however, are somewhat misleading when considered in isolation. The undisputed facts show, additionally, that 1) Plaintiff wrote to Ms. Borrego that she could not return to work because Dr. Rodgers had not released her to work nor could she return to work; 2) even though Plaintiff wanted to return to work, she felt she was unable to work; and 3) the Employee Change Notice documenting Plaintiff's termination as involuntary should have stated that Plaintiff's termination was actually voluntary. *See* Ex. 2, Ex. 4, and Depo. of Roxanne Borrego at 27-28, Ex. 8 (attached to Plaintiff's Exhibits); Depo. of Maria Lorencita Chavez at 73, Ex. A (attached to Defendant's Exhibits). When Facts Nos. 10,

---

[4] These numbers correspond with the Plaintiff's listing of facts intended to raise a genuine material issue on whether Defendant had "specific intent" to interfere with her ERISA rights. Plaintiff Chavez' Response to Qwest's Motion for Summary Judgment (Doc. No. 29)(Plaintiff's Response) at 14-15, filed Aug. 21, 2006.

12, and 13 are viewed in the context of the entire factual record they simply show that Plaintiff did not want to lose her job but, on the other hand, Plaintiff could not perform her job duties. A reasonable juror could not find that these particular facts show that Defendant had a "specific intent" to interfere with Plaintiff's ERISA rights.

>              *(3). Facts Concerning Failure to Accommodate Plaintiff's Disability (Nos. 14 and 16)*

Fact No. 14 alleges that Defendant did not attempt to accommodate Plaintiff's disability, but Fact No. 16 alleges that Defendant would have accommodated Plaintiff's disability had she returned to work first. Fact No. 14 is not supported by the evidence, because Plaintiff testified in her deposition that she did not request any accommodation which would have enabled her to return to work. Depo. of Maria Lorencita Chavez at 57, Ex. A (attached to Defendant's Exhibits). Defendant, therefore, could not have been expected to provide Plaintiff with an accommodation when she never asked for one. Moreover, Fact No. 16 actually shows a willingness on Defendant's part to accommodate Plaintiff's disability had Plaintiff decided to return to work. A reasonable juror could not find Facts Nos. 14 and 16 to be evidence of "specific intent" by Defendant to interfere with Plaintiff's ERISA rights.[5]

>              *(4). Fact Alleging that Plaintiff Had an Open Family Medical Leave Act (FMLA) Claim (No. 15)*

Fact No. 16 alleges that Plaintiff had an open FMLA claim at the time of her termination. Apparently, Plaintiff submitted paperwork for FMLA leave, but the evidence does not indicate if

---

[5]Plaintiff also generally contends without any analysis that Defendant's failure to accommodate Plaintiff's disability and Defendant's alleged requirement that Plaintiff return to work in spite of her disability were violations of the Americans with Disabilities Act (ADA). The Plaintiff, however, did not plead an ADA case and Plaintiff fails to demonstrate how a violation of the ADA would necessarily be proof of "specific intent" to interfere with ERISA rights.

that request for FMLA leave was for the Plaintiff personally or for Plaintiff to care for a member of her family. Depo. of Roxanne Borrego at 74, Ex. 8 (attached to Plaintiff's Exhibits). The evidence also does not indicate when Plaintiff submitted the FMLA paperwork. Additionally, as of September 28, 2004, Ms. Borrego did not know whether Plaintiff had any available FMLA leave. *Id.* Plaintiff has simply failed to provide any evidence to support her contention that she had an open FMLA claim for herself personally at the time of her termination in November 2004. Even if Plaintiff had an open personal FMLA claim at the time of her termination, the Plaintiff does not explain how having an open FMLA claim demonstrates a "specific intent" to interfere with ERISA rights. A reasonable juror, therefore, could not find that Fact No. 16 provides evidence of "specific intent" by Defendant to interfere with Plaintiff's ERISA rights.

> *(5). Fact Alleging that Defendant Requires an Employee to Return to Work When Claim for Short-Term Disability Insurance Benefits is Denied Even Though a Treating Physician Does Not Recommend a Return to Work (No. 11)*

Fact No. 11 alleges that it is Defendant's policy to require an employee to return to work after an employee's request for short-term disability insurance benefits has been denied even though the employee's treating physician does not recommend that the employee return to work. Assuming that Fact No. 11 is true, such an attendance policy is not prohibited under §510 even when employees choose to follow their treating physician's advice and not return to work. "[S]ection 510 is not intended to prevent an employer from firing an employee due to excessive absenteeism which ultimately harms productivity, but to prevent that employer from 'discharging or harassing' an employee with the specific intent of preventing the employee from 'obtaining vested pension rights.'" *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 298 (7th Cir.

10

1998)(quoting *Meredith v. Navistar Intern. Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991)). To show that "specific intent," a plaintiff must establish a causal connection between the employer's attendance policy and entitlement to ERISA benefits. *Id; see also Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th Cir. 1996)(human resources manager's statement that further medical leave would result in termination is not evidence of intent to interfere with ERISA rights when human resources manager did not advise plaintiff to refrain from exercising ERISA rights); *Kinkead v. Southwestern Bell Telephone Co.*, 49 F.3d 454 (8th Cir. 1995)(although plaintiff's supervisor was aware of her continuing medical disability, plaintiff failed to establish a *prima facie* case under §510 when there was no evidence that "termination was motivated by desire to prevent her application for additional benefits."). Plaintiff has not shown that there is a causal connection between alleged Fact No. 11 and any entitlement to ERISA rights. Consequently, a reasonable juror could not find that Fact No. 11 constitutes evidence of a "specific intent" by Defendant to interfere with Plaintiff's ERISA rights.

In sum, the Plaintiff has failed to produce evidence showing that Defendant had a "specific intent" to interfere with her ERISA rights. Accordingly, the Plaintiff has not established a *prima facie* case under §510. The Defendant is, therefore, entitled to summary judgment on Plaintiff's §510 claims.[6]

### c. Equitable Remedies Available Under §510

Defendant also argues that even if Plaintiff has a valid §510 claim, the remedies she seeks are not available for that claim. Since the Court has concluded that Defendant is entitled to

---

[6]The Court observes that Plaintiff makes unexplained references to a collective bargaining agreement and breach of contract claim in Plaintiff's Response at 19-20. The Court assumes that the Plaintiff made those references inadvertently.

summary judgment on Plaintiff's §510 ERISA claims, there is no need to address what equitable remedies would be available to Plaintiff under §502(a)(3).[7]

### 2. *Plaintiff's Wrongful Termination Claim*

Plaintiff alleges Defendant wrongfully terminated her in violation of the public policy found in §28-1-7(A) of the NMHRA which prohibits an employer from terminating an employee who has a serious medical condition. Plaintiff also alleges that Defendant violated the public policy found in §28-1-7(J) of the NMHRA which makes it unlawful for an employer to refuse or fail to accommodate a person's "serious medical condition, unless such accommodation is unreasonable or an undue hardship."

#### a. *Wrongful Termination*

In New Mexico, a plaintiff can file a common law cause of action "which allows a discharged at-will employee to recover in tort when his discharge contravenes a clear mandate of public policy." *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647, 777 P.2d 371, 375 (1989). The New Mexico courts recognize that the NMHRA provides a clear mandate of state public policy concerning discriminatory employment practices. *See, e.g., Vigil v. Arzola*, 102 N.M. 682, 688-89, 699 P.2d 613, 619-20 (Ct. App. 1983), *reversed in part on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984). Consequently, a plaintiff can bring a common law

---

[7]The Court notes that Plaintiff's requests for back pay, emotional distress, and punitive damages would have been unavailable to the Plaintiff under §502(a)(3) because they are not considered equitable in nature. *See Millsap,* 368 F.3d at 1260 (punitive damages not available under §502(a)(3) nor are "freestanding" claims for back pay); *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822, 827 (10th Cir. 1995)(emotional distress damages not available under §502(a)(3)). Plaintiff's request for front pay, on the other hand, would have been more problematic because "district courts have reached different conclusions whether a plaintiff can recover front pay under Section 502(a)(3)." *Michaelis v. Deluxe Financial Services, Inc.*, 446 F.Supp.2d 1227, 1231 n. 6 (D. Kan. 2006).

12

wrongful termination cause of action based on §28-1-7(A) of the NMHRA.[8]  A wrongful termination claim based on a violation of public policy fails, however, if the termination does not also violate the NMHRA.  *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004 ¶20, 131 N.M. 607.  The Court's discussion of whether Plaintiff's wrongful termination claim survives summary judgment, therefore, must begin with addressing whether that claim survives summary judgment when analyzed under §28-1-7(A) of the NMHRA.

Section 28-1-7(A) states:  "It is an unlawful discriminatory practice for ... an employer, unless based on a bona fide occupational qualification or other statutory prohibition ... to discharge ... any person otherwise qualified because of ... serious medical condition...."  The Defendant argues that it did not engage in unlawful activity under §28-1-7(A) because the Plaintiff is not "otherwise qualified" as demonstrated by Plaintiff's own evidence that she was unable to return to work.  The New Mexico Supreme Court in *Kitchell v. Public Service Co. of New Mexico*, 1998-NMSC-051 ¶6, 126 N.M. 525 defined "otherwise qualified" as referring "to a person who, though affected by a handicap or medical condition, maintains the underlying ability to do the job."  The New Mexico Supreme Court went on to explain that the NMHRA was not designed to provide a remedy "when an employer who is responsible for a worker's disability ... terminate[s] the worker and end[s] company benefits."  *Id*. at ¶8.  A worker who can no longer work "is concerned not so much with his 'human' rights-one of which is the freedom from discrimination in employment-as with his 'employee' rights, specifically how a totally disabled

---

[8]Of course, a plaintiff can bring a lawsuit directly under the NMHRA if that plaintiff complies with the grievance procedure set forth in the NMHRA.  *See Jaramillo v. J.C. Penney Co., Inc.*, 102 N.M. 272, 273, 694 P.2d 528, 529 (Ct. App. 1985).  In this case, the Plaintiff apparently did not comply with that grievance procedure.

employee is to be treated. That territory is covered by workers' compensation and social security laws." *Id*.

The Plaintiff argues initially that no New Mexico or Tenth Circuit case requires that an employee be "otherwise qualified" in order to show a public policy violation based on §28-1-7(A). As discussed *supra,* an employee is required to demonstrate that he or she is "otherwise qualified" to show a public policy violation based on §28-1-7(A).

Plaintiff then argues that the denial of short-term disability insurance benefits raises a question of fact as to whether Defendant considered Plaintiff disabled. Plaintiff is essentially attempting to create a question of fact with respect to the issue of "otherwise qualified" by contradicting her deposition testimony that she is indeed disabled. The United States Supreme Court has addressed this type of situation when the plaintiff is pursuing an ADA claim but has already been determined disabled for the purposes of receiving social security disability insurance benefits. In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807 (1999), the United States Supreme Court stated:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim [which require a plaintiff to be able to "perform the essential functions" of a job with or without "reasonable accommodation"]. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

The Court finds that *Cleveland* is analogous to the "otherwise qualified" question of fact issue raised by Plaintiff. Accordingly, the Court will apply the rationale in *Cleveland* to Plaintiff's argument.

The Court notes first that Plaintiff does not explain why she should be considered disabled but nevertheless able to work so as to be "otherwise qualified." Second, Plaintiff has not presented any evidence that she could return to her work even in a limited way. Instead, the medical evidence, as provided by Dr. Rodgers, supports Plaintiff's testimony that she cannot return to work. *See* Ex. 2 at 1 (attached to Plaintiff's Exhibits). Plaintiff also admitted in her November 1, 2004, letter to Ms. Borrego that Dr. Rodgers had not released her to go back to work and she could not return to work. Ex. 4 (attached to Plaintiff's Exhibits). In addition, on November 10, 2004, Plaintiff indicated in her social security disability application that she was unable to work because of her disabling condition. *Id*. at 62. *See Kitchell*, 1998-NMSC-051 ¶7 (plaintiff admitted he was not "otherwise qualified" under NMHRA when he stated in a "worker's compensation claim that his injury prevented him 'from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training, or experience.'"); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1332 (10th Cir. 1998)(statements made in connection with social security disability application may "constitute evidence relevant to a determination of whether the plaintiff is a 'qualified individual with a disability' [under the ADA]."). Finally, Plaintiff testified in her deposition that she could not work even with restrictions. Depo. of Maria Lorencita Chavez at 49, 73, Ex. A (attached to Defendant's Exhibits). Assuming that Plaintiff's prior assertions of disability are true, a reasonable juror could not find that Plaintiff was, nonetheless, able to return to work. Hence, a reasonable juror could not find that Plaintiff was "otherwise qualified" and therefore, could not find that Defendant committed the tort of wrongful termination based on a violation of the public policy embodied in §28-1-7(A). Defendant is entitled to summary judgment on Plaintiff's wrongful termination claim.

15

### b. Failure to Accommodate

Plaintiff claims in her Complaint for Damages From Violation of the Employee Retirement Income Security Act and Wrongful Termination (Complaint) (Doc. No.1), filed April 18, 2005, that Defendant violated the public policy found in §28-1-7(J) when "Qwest terminated Chavez for the sole reason that her serious medical condition did not permit her to work at her former job without reasonable accommodations." *Id*. at ¶59. The undisputed evidence shows that Ms. Borrego offered to discuss the possibility of an accommodation with Plaintiff. Plaintiff responded to that offer by stating that she could not return to work, thereby implying that there was no accommodation which would enable her to return to work. In fact, Plaintiff later testified at her deposition that she could not return to work even with restrictions. Plaintiff's evidence simply does not support a failure to accommodate claim.

Plaintiff argues, alternatively, that Defendant should have reassigned her to another building which did not have problems with toxic chemical exposure. A reasonable accommodation under the NMHRA, however, does not require a reassignment. *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1256 (10th Cir. 2004). Since it is undisputed that Plaintiff could not be reasonably accommodated in her former job and a reassignment was not required under the NMHRA, a reasonable juror could not find that Defendant engaged in unlawful conduct under §28-1-7(J). *See id.* Therefore, a reasonable juror could not find that Defendant violated the public policy expressed in §28-1-7(J). Defendant is, likewise, entitled to summary judgment on Plaintiff's tort claim based on a violation of the public policy requiring the accommodation of persons who suffer from a serious medical condition.

IT IS ORDERED that Qwest's Motion for Summary Judgment and Memorandum in Support of the Motion (Doc. No. 26) is granted and all of Plaintiff's claims will be dismissed with prejudice.

*/s/ James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE